Mr. Steven L. Walker. Are you on behalf of the plaintiff at the lead, Mr. Steven A. Pryor? Gentlemen, are you both ready to proceed? Yes, Your Honor. Then you may proceed when you're ready. However, I do believe we have a motion by the State to cite additional authority. Is there any objection to that? It was People v. Montgomery, a relatively recent Second District case. I have not received a copy of this motion, so... It was filed on November 28. People v. State. Your Honor, I can make a copy of the counsel. All right. We'll proceed with the argument, and we'll take that up at the conclusion of our arguments. Are you otherwise ready to proceed, then? You may proceed when you're ready. Good morning, Your Honor. Good morning. May it please the Court? My name is Steven Walker, and I represent the defendant, Ellen Tarita Pryor. Your Honor, there are two issues presented here today. The first being, in opposite of my brief, whether Mr. Moore's injuries rose to the level of grave bodily harm, such that the jury could find improvement beyond reasonable doubt. The second issue presented is whether the trial court erred in denying Pryor's motion, excuse me, jury instruction regarding lost evidence. Was that an IPI jury instruction, counsel? It was. It was a civil IPI instruction. As to the first issue, while it was undisputed that Mr. Moore was injured, his injury consisted of four inch-long lacerations, approximately inch-long lacerations, which were treated by glue. Treated by what? Not glue. Gluing. No stitches. Oh, that's right. Yeah, thank you. Mr. Moore also, no part, excuse me, no witness testified that Mr. Moore felt any pain either. While he did complain of bleeding, and his companion, Ms. Anderson, also testified that there was a lot of blood. That in and of itself is not indicative of grave bodily harm. According to the concurrence in NEJA, that's 336LF3rd, grave, according to Webster's Third New International Dictionary, means remarkable in magnitude, intensity, degree, or effectiveness. A cut, or four lacerations, although they may bleed profusely, does not necessarily mean that he suffered some remarkable harm. I, for instance, cut myself yesterday while washing a knife, and although it bled quite a bit, my life was not in danger. It was easily treated with a Band-Aid, similar to Mr. Moore's injury being treated with glue. Now, although the treatment received is not necessarily indicative of the harm inflicted, I think it is important to note that there were no complications with his injuries either. This case is also distinguished from... Isn't that a factual question? Yes, it is a factual question for the jury. Right, as opposed to a legal question. Yes, that's correct. But, although it is a factual question, the question here is whether, viewing the evidence in the light most favorable to the prosecution, whether any reasonable fact finder could have found that great bodily harm was inflicted. While they may have been able to find that bodily harm was inflicted, an injury such as four lacerations is not particularly remarkable. As stated in Pupil v. Mays, our Supreme Court stated that bodily harm consisted of abrasions and lacerations. That's exactly what injury Mr. Moore received here. Further, this case is distinguishable from other decisions which have affirmed findings of great bodily harm in that Mr. Moore received one injury. And although, again, it bled profusely, it was one injury to the forehead treated with glue. Was it really... It was kind of deep because didn't... If my recollection serves me, didn't he show the jury the cut in his forehead? There was still like a deep scar. So, again, as Justice Spence said, isn't this an issue for the trier of fact as opposed to a question of law? This is, again, yes, this is a question of fact. But it's also whether or not a reasonable fact finder could have found this proven to be unreasonable. The standard here is reasonableness. Ms. Pryor's argument is that it's unreasonable to state that something as unremarkable as four lacerations could constitute great bodily harm. She's not arguing that bodily harm was inflicted, but was it great? Why don't you move on to the next issue? Regarding the second issue, Ms. Pryor argues that the trial court did in fact abuse its discretion in denying the non-pattern jury instruction regarding the lost evidence. In this case, the evidence was uniquely in the possession of... Wait a minute. You just said non-pattern. Are you saying that because it's a civil IPI? Because it's a civil IPI, yes. In this case, the evidence, the lost evidence, was uniquely in the possession of the Batavia Police Department, which was on notice several days prior to the incident which they recorded over her oral statement. So in order to submit that jury instruction that you had submitted, you had to show that, or you had to show that you could infer that the missing video was detrimental to the state, correct? Wasn't it essential that that be a part of the element for the necessity in order to admit that jury instruction? Your Honor, I believe the civil IPI is distinguishable, but... Excuse me. The instructions regarding issuing the jury instruction are distinguishable in a civil case as opposed to this being a criminal case where the burden of proof is higher. In a civil case, it's not the evidence is booked out. It's clear and convincing evidence or something to that effect. But you still have to follow the burden in the criminal case even though you're asking to give us a civil jury instruction, correct? I would not say that's the case, Your Honor. I believe that counsel's intention in filing or in providing this instruction actually was intended to mirror the language in Pupil v. Danley. That's going to be 274-113-358, in which the court found that an instruction such as the one submitted by counsel serves as an effective protection to the defendant from any uncertainty that might arise from the missing evidence. In this case, this was a contest of credibility between Mr. Moore and Ms. Pryor. For the evidence to be missing and then later in closing argument for the state to argue that Ms. Pryor told four different stories is, I believe, both unfair and obviously prejudicial to Ms. Pryor because defense counsel was not able to review this evidence. Further, it also implicates an important policy matter in incentivizing police to exercise due care in handling evidence. That's also quoted from Pupil v. Danley. And you're absolutely correct. However, aren't there certain requirements that have to be met in order for you to get an instruction on a missing video, like that it was under control of the party and it could have been produced by the exercise of due diligence, evidence not equally available to the adverse party, a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him and no reasonable excuse for the failure has been shown. Don't you have to show those four requirements? Yes, Your Honor, and I believe in this case those elements were shown. Again, the Batavia Police Department was on notice seven days prior to when her oral statement was reported over. But didn't she testify that her written statement was the same as her oral statement? Yes, she did testify that her written statement was the same as her oral statement. However, the State later impeached this testimony. In rebuttal after defense brought it up in closing, correct? Correct. However, the jury instruction conference occurred before Ms. Pryor testified. And at that point, there was evidence sufficient to show that this instruction should have been given. Was there any evidence that the police destroyed this in bad faith? There was no evidence that the police destroyed this in bad faith. However, this standard is different than attempting to dismiss a charge under prior Supreme Court precedents, United States Supreme Court precedents. In this case, the instruction merely informed the jury that this evidence should not be considered against the defendant, that it should not, where a party should have exercised due care and did not, regardless of the excuse, that evidence should not be later used against the defendant. It's a simple matter of fairness. What's the standard of review here with respect to this issue? With regard to this issue, I believe it's abuse of discretion. If the written statement and the recorded statement by the defendant's own words are the same, why isn't this just merely cumulative evidence? Your Honor, looking at Ms. Pryor's testimony as a whole, it appears as though when she says the same, she means generally the same. It does not. What was at issue here was the particularities of her statements. For instance, also known as... Whether glass was found. Was it inside or was it in the hall? Correct. Correct. Does that really matter for the eventual outcome? I would say in the context of credibility where there are only two witnesses to the incident and both are disclaiming being the principal aggressor responsible for the events that transpired, yes, this is proof. Does it matter that Miller testified? I believe that was the police officer that he testified. As to what she said in the recorded statement, which appears to be different than what she testified to in trial? Yes. This is, again, very important because... That wasn't raised on appeal, though. It's just the issue of the instruction. That's a piece of the argument as to why the instruction should have been given. Correct. This is a very narrow issue. You're correct, Your Honor. Whether or not this instruction should have been given. Officer Miller's rebuttal is not in question at this time. Obviously, it was not raised in the brief. But I do think that goes toward why there was error for this instruction not to have been given. Therefore, as part of the request, that this court reverse her conviction for aggravated battery and remand for a new trial with the inclusion of the lost evidence during the trial. Thank you. Thank you. Good morning, Your Honors. Counsel. May it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honor, I'll briefly touch on what was the second issue of the brief, which is the issue of great bodily harm. The state's position is that is undoubtedly a question of fact. The fact that Mr. Moore didn't testify as to the pain, the trial court in the post-trial motion dismissed that as the jury can use common sense. If you have four lacerations on your head, you're applying gauze, blood is dripping down your face, you can infer that he suffered some pain. Well, can you not infer that this might just be merely a simple battery? Well, Your Honors, I think Justice McDade said it best in Cisneros that a laceration can be minor or trivial or it can be grave and serious. The state's position is it falls on the end of grave and serious, not just because the amount of blood was extensive, but also because, similar to Cisneros, the victim here showed the jury the scars, and the jury gets a chance to observe. They could be razor-thin scars that are a healing paper cut, or it could be a deep scar. I believe the trial here was approximately a year and a half after the incident. Did the defendant in this case avoid stitches? The victim, yes, Your Honor. I'm sorry. No, that's right. Yes, Your Honor. His testimony was that he was told he had to have stitches, and he said, in his logic, that he thought stitches would result in a scar and that he wanted to opt for the glue. So the medical staff said they would try to glue the wound shut. Let's see. On the jury instruction issue, there is certainly, if you apply 5.01, and that's what was tendered, not what was offered in Danieli, or not what the court eventually said in Danieli would have been the appropriate instruction. What was tendered here, when you look at the notes on use, the trial court does first have to determine that in all likelihood a party would have produced the document under the existing facts, except for the fact that the contents would be unfavorable, and the trial court rejected that here. There was no evidence that the state lost the evidence or failed to preserve it just because it was exculpatory. And then, additionally, because that's the whole basis of this instruction, is it almost assumes the party has the evidence in its possession, and if it was beneficial, that party would bring the evidence forward. But the fact they're not bringing it forward means it's adverse. That furthers the truth function of the trial. And then it's their burden to show bad faith, correct? Exactly, Your Honor. They're withholding the evidence because they're saying, Oh, this is not going to look good to a jury. And that makes sense. But in this case, it seems to be it really gets at a policy issue as opposed to furthering the truth-seeking function of the trial. So, according to that note, then it would seem like you'd almost be in a position where you'd have to show it was a Brady violation. In a criminal context, pretty close, yes, Your Honor. I mean, I guess every once in a while there might be a witness issue, but, yeah, when it's evidence, you have to show the State is seeking to withhold that evidence for some reason. Well, how about what... And I don't see it brought up or raised in the appellate briefs, but counsel alluded that it's all one and all a part of it, the fact that the State brought up this statement and kind of talked about the contents of the statement. I mean, how can they do that when they don't produce the statement and they did it in rebuttal, whereby the defense doesn't have an opportunity then to address it? Yes, Your Honor. I don't believe in the State's case in chief they addressed this oral statement. They did not. And then the defendant in her testimony says they're the same. And then the State... You mean the recorded statement? The recorded statement. Yeah, when you say oral statement, the recorded statement. Yes, Your Honor. The recorded and not preserved statement. The State doesn't bring that up in its case in chief. The defendant says the oral statement that was recorded is the same as the written statement. And then in cross-examination, the State really delineates what was said, asks the defendant what was said to the police in that recorded interview. And the defendant says yes or no to multiple things. And then they recall Officer Miller, and I believe it's around pages 501 and 502 of the record. And Officer Miller really clarified, if you look at the distinctions between the two. But isn't that the point? The State loses the recorded statement and then in rebuttal puts on a witness to say what was in the lost evidence. Yes, Your Honor. How is that appropriate? I mean, how can you both use it as a shield and a sword and say, well, you know, it wasn't exculpatory, so we're off the hook for losing it. But then let a witness say that that's what the statement was. That's what she said in the recorded statement. And she says it was different. The State puts on a witness to say this is what was in there, but they lost the evidence. How can we justify that position? Well, Your Honor, I think the State's intent was we're not going to address it until the defense puts on their case addressing the interview. And once the defense puts on the defendant to say that it was the same, then the State then puts on the evidence to clarify. Not clarify, to impeach her with evidence that they lost. I mean, she has no recourse to say, no, Officer Miller, that's not what I said, because here's the tape of what was said on that. Isn't that really improper impeachment? Well, Your Honor, I guess it goes two ways. One is, so if the State could have just let me. She says the written statement is the same. The distinctions that are brought up, the impeachment, the couple items that where the glass is found and whether she specifically said that the glass hit his forehead are so minor that those. So it's just a little transgression. Well, when you look at prejudice, Your Honor, even if you said this is the type of case where the civil IPI 501 is appropriate, then I think you have to look at what is involved in the outcome, because that's the harmless error standard for a failure to give a proper jury instruction. Right. So if the court gets to that point, then the distinctions are so minor that it would not have swayed the jury, because ultimately her story in the last three are for the self-defense part of it. I'm sorry, the last three? Her last three statements. So you have her first statement's at the seat, and she denies any involvement. Right. Then they take her to the police station, and she then admits to being involved, but she said she was struck first. That's the same throughout. That's the same in her recorded oral statement, written statement, and her trial testimony, is that she seeks to break up this fight using verbal means. She is struck in the head, stumbles back, grabs this glass, and then throws it in the direction of the victim. And that is consistent across all three, and that makes up the heart of her self-defense case, whether the jury believed that premise. And another argument in favor of finding no prejudice is the nature of this evidence. In Danieli, it's underwear, which was really the heart of the dispute. And in Aronson, it's a field sobriety test. That is an objective, objectively proves one way or the other a key fact in the case, whereas this would have been, had the state preserved it, the fourth of four statements, or it would have been the second of four. But you wrap up, and she's making all these statements, or all sorts of distinctions, even if the jury would have been instructed, as the defendant claims the benefit, that the second statement is identical to the trial testimony. Right. She still has the written statement, and there are still all sorts of things within the trial testimony. And then, of course, we have two other witnesses. We have Moore, and we have Kiera Anderson, who's a part of the group that entered, who didn't see the glass being thrown, but she certainly saw parts of the application. And another— So bottom line, you're saying whether or not the state improperly used lost evidence to impeach her, there is no prejudice here? Yes, Your Honor. Are you confessing that there is an error, and the question is there's no prejudice? No, Your Honor. I wouldn't confess that this was an abuse of discretion because, for one— Wait, wait, wait. Abuse of the state's discretion? Well, no, abuse of the trial court's discretion. No, no, no. To use the lost evidence to impeach her. I think it's empty. I think the state was going along the right lines. They weren't going to use the evidence, but then once the defendant testifies they're the same, and then exactly what she said, the state then impeaches her of that. But, again, the defense here presented IBI civil 5.01, and this is actually very similar to the instruction originally offered in Danieley. And the court in Danieley said, no, that instruction's actually not proper because one of the first things it says is if a party in this case has failed to offer evidence within his power to produce. And they said, well, that's kind of confusing because the evidence is long gone at that point. And so the jury might start questioning, well, how can you produce something that no longer exists? That's when they said, hey, but in Youngblood they used this really good instruction. On retrial, because we're reversing on a, I think it was an ex parte communication with a jury, hey, use this Youngblood instruction as opposed to it. So in Danieley the court actually said this instruction would not be given under the facts. They asked for this instruction to be given prior to closing arguments, correct? Yes, ma'am. And they never argued, according to the transcript, that the reason they wanted this given was because the defendant was impeached. Did they? I don't believe so, Your Honor. Actually, when I went back and looked, I believe they asked for this instruction before they put on their case. Right. So the state finishes and, you know, often we'll do the jury instruction, let's see where we're at. They say, hey, we would like this instruction. So before any impeachment. But, you know, pretrial they do the motion to dismiss. So it really stems from that. This was a misconduct. My point is the issue of improper impeachment was never raised. No, Your Honor. There was certainly never an objection when the state went to put Officer Miller back on the stand. That was never an issue. And I don't believe outside of this jury instruction issue it has been raised in any way. Actually, that reminds me. In the motion to dismiss, wasn't it the state's position that all four statements were virtually identical? I'm sorry, not the scene, but the other three were virtually identical, and that, therefore, the charges should not be dismissed based on the last evidence? The second, third, and fourth statements? Yes. Not the scene. The recorded, written, and at that point, the recorded and the written were virtually identical. I believe that's pretty close to the state's position then and really the state's position now when you look at the substance. No, I think in closing, as the defendant points out, they're kind of bouncing between stories and saying certain aspects are way different then. My question really is here did the state take one position at the motion to dismiss, like don't dismiss these charges because the recorded and the written statement are virtually identical, and then at trial say, well, we're going to start nitpicking that there were some differences. Is that something we should condone? I'm not sure, Your Honor, to be quite honest. I mean, I certainly remember reading the litigation on the due process, but I don't remember if specifically the state said they're identical, so it's kind of no harm that we lost one of them. Okay. If the court doesn't have any further questions, the state respectfully requests that this court affirm the defendant's conviction. Thank you. Do you wish to reply? Great. Your Honors, although the court, due to the dam, did state that 5.01 may not have been the appropriate instruction, in this case, the instruction was offered to the court, and given the facts, given the circumstances, it could have modified the instruction as is proper to Isn't that the defendant's burden to submit the instruction? It is the defendant's burden, correct. But the defendant, the defense counsel in this case, informed the court that her intent in bringing up this instruction was simply to have this evidence considered against the state because they were in possession of it. The exact instruction was never issued. Her intention, although perhaps she should have provided a different instruction, was to merely inform the jury that the state lost this evidence that was uniquely in its possession. It was the defense attorney's position to urge the court to in some way instruct the jury? Correct. So to tell the jury that the state was naughty in losing the tape, basically. Correct. Without any evidence of bad faith. In this case, as stated, it went more to the policy concern and then, of course, later to the issue and rebuttal of impeaching prior testimony, of making sure that the police maintain evidence, especially when they're on notice, and in order to avoid unfairness in using this evidence against the defendant. Well, but you submitted this jury instruction long before that, and you just said that the intent was to tell the jury that the state lost the tape. Correct. And you never raised the issue in pre-trial motions or on appeal, anything about a rebuttal. Your Honors, I believe I did briefly mention in my opening brief that Officer Miller's testimony as to what prior said in her oral statement impeached prior, despite her testimony that her written and oral statements were the same. What page are you on? In my brief, I believe, I don't have the exact page right now, I'm sorry. If there are no questions. Okay, thank you. Have you had a chance to review a copy of the state's motion to cite Peeble v. Montgomery? Yes, I have those motions. And that motion will be granted. Thank you both for your arguments this morning. We will be in recess until the next case at 9.30.